## BIRD vs. FAKE and COTTON.

1. LIQUOR LAW — REPEAL. The sixth and seventh sections of the statute of Michigan to regulate taverns, approved 23d April, 1833, which prohibited the trusting of any person except travelers or lodgers, for drink or other tavern expenses over $1.25, and made void any note or other security for the same, affected the remedy only, and being repealed, prohibited charges made while it was in force, may be sued for and recovered.

2. SAME. The prohibitions of that act did not vest any right in the party trusted within the saving clause of the repealing statute. But see 2 Wis. 237.

3. DORMANT PARTNER — JOINDER. A dormant partner need not be joined with his copartners in an action to recover partnership demands; and the fact that the defendant knew him to be a partner does not alter the case so as to make it necessary that he should be joined; the defendant must have known the dormant partner as such in the transaction which is the subject-matter of the suit.

4. POWER OF PARTNER. One partner cannot bind another in the transfer of accounts and the settlement of the business of the firm as between the partners without his consent; and to make such transfer or settlement binding as between the partners, they must all consent to it.

ERROR to the District Court for *Milwaukee* County.

Assumpsit, brought by *Fake & Cotton* against *Bird*, upon a bill of charges in favor of the plaintiffs as keepers of the American Hotel at Madison, against the defendant, a large portion of which was for liquors and hotel expenses. The last item of the account was dated August 30, 1839. *Bird* pleaded the general issue, and gave notice of set-off, and that the amount of the plaintiffs' demand had been paid and applied by the defendant, at their request, upon the discharge of a debt owing by the plaintiffs for rent of the American Hotel to James Morrison. An objection was raised on the trial to the non-joinder of James Morrison as a co-plaintiff.

The deposition of Morrison was read upon the trial; which, after proving a written agreement between him, as the owner of the American Hotel and *Fake & Cotton*, which is embodied in the opinion of the court, proved

further ; that *Fake* presented to him an account due from *Bird* to the American Hotel while it was kept by *Fake & Cotton*, under said agreement, amounting to $255.15, being the balance due from *Bird* as stated by *Fake*, which amount deponent assumed as part payment of his share of the profits of the house, and credited *Fake & Cotton* with their proportion of said account, at their request, and charged the same to *Bird*. It was the understanding that by this arrangement *Bird* was released from all claims of *Fake & Cotton*. This arrangement was made on 30th or 31st August, 1839. *Bird's* account was charged in deponent's book and posted in his ledger. *Fake & Cotton* were in no other business than keeping the hotel, while the account accrued, to his knowledge. At the time of the arrangement, deponent told *Fake* that if *Bird* acknowledged the account to be correct, he would receive it in payment of his proportional part of the profits of said house. He afterward saw *Bird*, who said it was correct, and deponent agreed to receive it as payment from *Fake*, as above stated. The account is charged against him in *Fake & Cotton's* books. *Bird* and deponent have an unsettled account, and *Bird* has put property in his hands to secure that and all other debts. The above transfer was agreed upon between *Fake* and deponent, but they did not effect a full settlement of other matters in relation to the American Hotel. There had never been any difficulty between deponent and *Fake & Cotton* in relation to the transfer of *Bird's* account.

It was also proven on the trial that the plaintiffs below kept the American Hotel under the name and firm of *Fake & Cotton ;* that they so advertised, made and paid their bills, etc. That Morrison lived thirty miles from Madison, and did not take any active part in the business of the hotel ; and that the account against *Bird* was correct for the balance of $255.15.

After the evidence was closed the court charged the jury :

"The objection to the writ in this case cannot defeat the action at this stage. The declaration was filed by

both plaintiffs conformably to the affidavit for the writ, to which the defendant pleaded the general issue. The cause is regularly at issue between the plaintiffs, *Fake & Cotton*, and the defendant."

" The statute of Michigan, forbidding the collection of tavern bills, was a statute affecting the remedy, and being repealed does not now operate against the plaintiffs' recovery."

" It probably would not have been improper to include the name of James Morrison, but it was not necessary, and the action is well brought without it. A defendant is not obliged to plead in abatement the non-joinder of a partner who ought to have been made a co-plaintiff, but may take advantage of it on the plea of the general issue. But it must appear affirmatively that such partner was an acting partner, for if he was merely a dormant partner he need not be joined. An actual, without an apparent interest in the profits of a concern, constitutes a dormant partner."

"The several members of a firm cannot transfer to one of them their apparent interest in a joint debt so as to enable him to sue and recover it in his own name. The original relation of debtor and creditor cannot be shanged without the consent of the debtor. If this were a transfer of this account by the plaintiffs to Morrison, without the consent of the defendant, Morrison would have to sue in the name of the partners, which a judgment in this case in favor of *Bird* would defeat. It might be competent for Morrison to collect and receive this debt, but it does not appear that it has been actually paid by *Bird*. Then, as it has not been paid by *Bird*, and there. is no allegation that *Lester H. Cotton*, one of the plaintiffs, ever consented to, or engaged in the alleged arrangement between *Fake & Morrison*, the plaintiffs' recovery in this action, cannot thereby be defeated."

The defendant asked the court to instruct the jury: " That *Lester H. Cotton* is bound in this matter by the act of *Fake*, they being copartners." To which the judge

replied, and charged the jury: "*Cotton* in this matter, is not bound by the act of *Fake*, without his consent."

The defendant also asked the court to instruct the jury: "That if the debt to *Fake & Cotton* has been paid at their request, and has been credited by Morrison to them, then the plaintiffs cannot recover." To which the judge replied, and charged the jury: "This is a debt to the whole firm, and, if paid in any way by defendant, the plaintiffs cannot recover."

The jury returned a verdict in favor of the plaintiffs, upon which the court rendered judgment.

*H. N. Wells* and *J. E. Arnold*, for plaintiff in error.

The charge of the judge to the jury, in relation to the tavern expenses charged in the plaintiffs' bill of particulars, is not consistent with sound principles of law. The fair construction of the statute of Michigan, in force at the time, will make such sales and charges void, *ab initio*. The 6th section of the act (Laws of Mich. 126), prohibits trusting for such charges, and declares that the tavern keeper shall lose the debt, and be incapable of suing for it. The 7th section makes void any note or other security taken for such charges, and affixes a penalty for taking it. The policy of the law, and the manner in which it is framed, show that it was the intention of the legislature to make all such contracts absolutely void; and a contract that is void at the time, under a prohibitory penal statute, cannot be made valid by a subsequent repeal of the statute, and no promise afterward made to pay it, is binding.

The court erred in instructing the jury that the action was well brought without joining Morrison as a co-plaintiff. We admit that a dormant partner, not known at the time or dealt with as such, need not be joined (3 Cow. 84; 4 id. 717), but if the dealing was with a dormant partner, known to be one of the firm, he should be joined. 2 Whart. Dig. 326. This account was due to the American Hotel company, which was composed of Morrison, *Cotton* and *Fake*. *Bird* knew them to be partners,

for he signed the agreement, and he dealt with them as such. From his knowledge and dealings, Morrison was not, as to him, a dormant partner. 4 Watts, 455, 456. Whether Morrison was an active or a dormant partner was a question of fact for the jury alone to decide. The court below decided the fact, and took the question from the jury by the instructions given.

Again, the court assumed a matter of fact, in charging the jury, that it did not appear that the debt had been paid by *Bird*. It is error for the court to assume a matter of fact to be true, that can only be ascertained by the verdict of a jury.

The instructions of the court that *Cotton* should have consented to any arrangement to settle the account in order to bind him, and that he was not bound by the act of *Fake*, were not according to the principles of law. One partner has power to bind the firm, in matters relating to the partnership property and the settlement of partnership debts. 3 Kent's Com. 20, 21, 22, 24, 25 ; 4 Binney, 375. And a release from one partner of a debt due the firm will bind all the copartners. 3 Kent, 24 ; 14 Johns. 387 ; 3 id. 68 ; 17 id. 58. In this case, *Cotton* & *Fake* as one party, contracted with Morrison, and were jointly bound to him. They were themselves copartners as to Morrison, and *Fake* was acting for himself and *Cotton* in settling the business with Morrison. The arrangement was for *Cotton's* benefit, and, independently of the power to bind him, his consent ought to have been presumed ; at least the question ought to have been left to the jury for them to decide.

*John H. Tweedy*, for defendants in error, cited Collyer on Part. 394 ; 4 Watts, 365 ; 4 Cow. 717 ; 3 id. 84 ; 4 Wend. 408 ; 2 Vt. 65 ; 3 Greenlf. 394 ; 1 Chitty on Plead. 13 ; 9 Cow. 680.

IRVIN, J. This cause which was tried and decided in the district court of Milwaukee came up on error, as set forth and complained of, in exceptions taken to the sev-

eral decisions and directions of the court to the jury, both in its general charge and special instructions asked for. When instructions to the jury are asked for upon a particular point of law as connected with the case generally, or upon the law connected with a particular point in the evidence, and exceptions to the instructions given are taken, the inquiry of the appellate or court of error is generally confined to the particular and more circumscribed matter thus presented; but when the exception is taken to matter of the general charge of the court to the jury, as well as particular instructions asked for, the inquiry in the appellate court necessarily becomes more extended, and sometimes apparently diffuse, as the general charge rests upon the views taken of the whole case as presented.

The first exception taken in the court below is, in this court abandoned, so far as the writ is concerned, and will not therefore, be considered.

By a provision of the statute of the Territory, when a creditor sues out a process of attachment against his debtor, any other creditor of said defendant may, at or before the second term of the court after the return of said process served, file his declaration, and proceed therein to judgment as in other cases. This appears to be a case of that kind, and in which the defendants in error seek to recover of the plaintiff in error the amount of a bill of particulars through the medium of a declaration in assumpsit, to which the defendant pleaded the general issue.

In the progress of the trial, it appeared that *Fake & Cotton* were the keepers of a hotel at Madison, called the American Hotel, and as such keepers sold and furnished to *Augustus A. Bird*, the items mentioned in said bill of particulars, among which were charges for spirituous liquors, which account of items commenced on the 30th of November, 1838, and terminated on the 30th of August, 1839. Up to the 4th of July, 1839, the laws of Michigan were in force in this Territory, when they ceased by repeal. In this case, *Bird*, the plaintiff in error, relied for a part

of his defense on the sixth and seventh sections of "An act to regulate taverns." Laws of Michigan, p. 126, Revision of 1838. As further defense in the court below, *Bird*, the plaintiff in error, introduced an agreement purporting to be made and entered into by James Morrison, of the first part, and *L. H. Cotton* and *Henry Fake*, of the second part, which was signed and sealed by *L. H. Cotton* and *Henry Fake*, and James Morrison by *A. A. Bird*, by which the American Hotel was leased to *Cotton* and *Fake*, and which regulated and disposed of the profits arising from said hotel, between the said Morrison, the lessor, and the said *Cotton & Fake*, the lessees. This was introduced for the purpose, 1st, of showing that Morrison was a partner in the keeping of said hotel, and should have been joined in the action ; and, 2d, that his acts, as such partner, bound the firm keeping the American Hotel.

The 6th section of the law of Michigan above referred to, is as follows : "If any tavern keeper shall trust any person other than travelers, above the sum of one dollar and twenty-five cents, for any sort of strong or spirituous liquors, or tavern expenses, he shall lose every such debt, and be incapable of suing for the same, or any part thereof, and if any such tavern keeper shall sue therefor, the person may plead this act in bar, or give it in evidence under the general issue, and if the plaintiff shall become nonsuited, or a judgment shall be given for the defendant, every such plaintiff shall pay double costs."

The 7th section makes void all securities taken upon such trusting, and among other things makes an exception in favor of the tavern keeper in the case of lodgers and travelers.

The agreement referred to is as follows : "An agreement made and entered into at Madison, this 21st day of November, A. D. 1838, between James Morrison, of the county of Iowa and Territory of Wisconsin, party of the first part, and *L. H. Cotton* and *Henry Fake*, of the town of Madison, county of Dane, and Territory aforesaid, party of the second part, witnesseth : That the said Mor-

rison, party of the first part, for himself, his heirs and assigns, doth hereby agree to furnish the house now known as the American Hotel, in Madison, in a suitable manner for the accommodation of guests, and will also furnish one laboring man to cut firewood for said house, and doth hereby lease the same to the above-named party of the second part, they complying with the following conditions, to wit : The said party of the second part, for themselves, their heirs and assigns, agree to take the above-mentioned house on a lease of one year from the date of this article, after having been furnished as above described, and will furnish all necessary help and keep the same in as good a manner as possible, and at the expiration of each three months during the term of said lease, will divide the net profits that may accrue equally with the said party of the first part, and return the furniture in as good order as when taken, excepting the natural wear and tear thereof; and the said party of the second part furthermore agrees to pay one-half of whatever the cost may be of insuring the furniture against loss and damage by fire, the same to be insured as soon as possible. And it is further understood, that each party is to be at half the expense of furnishing provisions, liquors, and all necessary eatables for said house."

It further appears from the testimony returned with the exceptions taken in the cause, that some time in the summer of 1839, *Fake* and Morrison attempted a settlement of the matters arising out of the keeping of the said hotel, when *Fake* proposed that Morrison should take the account charged against *Bird*, which was then declined ; nor does it appear that the parties, *Fake* and Morrison, ever had another interview about it. Morrison, in his deposition taken herein, says : "I afterward saw *Mr. Bird*, who said (in allusion to the account against him), it was correct, and I agreed to receive it as a payment from *Mr. Fake*, as above stated," but with whom he agreed does not appear. Thus stand the prominent matters in this case, to the understanding of which, a state-

ment is made necessary from the desultory and unsatis-
factory manner in which the exceptions were taken below,
exceptions in the most part taken to the general charge of
the court to the jury, which we are bound to presume
was given from a full view of the whole case.

The errors are assigned merely by reference to the
exceptions in their numerical order.

The second exception is to this charge of the court:
"The statute of Michigan, forbidding the collection of
tavern bills, is a statute affecting the remedy, and being
repealed, does not operate against the plaintiff's re-
covery." In the examination of that statute, which has
already been recited, the prohibitions therein contained
are not directed against the act of selling, but of collect-
ing. The right to sell to any extent, the articles therein
mentioned, cannot be questioned, so that it be done for
cash, and not trusted, for it says, "if any tavern keeper
shall trust any person," etc. The right to sell, therefore,
cannot be doubted, and the only prohibition being upon
the collection, it becomes clearly a matter that relates to
the remedy, and the statute being since repealed, and be-
fore the commencement of this suit, the inhibition upon
the remedy was removed with the repeal. At the time of
the repeal spoken of, it was done under a regular revision
of the laws, and was accompanied by this general pro-
vision which is found in the fourth section of the act, page
407 of the statutes of Wisconsin, and is in these words:
"The repeal of any statutory provision by this act shall
not affect any act done or right accrued or established, or
any proceeding, suit or prosecution had or commenced
previous to the time when such repeal shall take effect,"
etc. The prohibition upon the remedy was not such a
right accrued or established, as was contemplated by the
act, nor was it a vested right. The court did not, there-
fore, err in the instruction given.

The third instruction excepted to, is this: "It probably
would not have been improper to include the name of
James Morrison, but it was not necessary, and the action

was well brought without it.   A defendant is not obliged to plead in abatement the non-joinder of a partner who ought to have been a co-plaintiff, but may take advantage of it on the general issue ; but it must appear affirmatively that such partner was an acting partner, for if he was merely a dormant partner he need not be joined.   An actual, without an apparent interest, in the profits of a concern, constitutes a dormant partner."

It is a principle of law well settled, that a dormant partner (and the court are satisfied from the evidence that Morrison is nothing more), need not be joined with the active partners in a suit.     8 Serg. & R. 55 ; *Morse v. Chase*, 4 Watts, 456.   And the fact that *Bird* personally knew Morrison to be a partner (the fact of partnership being conceded) nothing militates against the principle that a dormant partner need not be joined ; for the true distinction we take to be this : that the defendant must know the dormant partner in the *transaction* which is the matter of litigation ; that is the knowledge which the law requires, in order to make an exception to the general rule.     3 Cow. 34 ; 1 Chitty on Plead. 7, 8 ; 2 Esp. 468 ; 2 Taunt. 324, 326. In this the court did not err.

The fourth exception is to this charge of the court : " The several members of a firm cannot transfer to one of them their separate interests in a joint debt, so as to enable him to sue and recover it in his own name.   The original relation of the debtor and creditor cannot be changed without the consent of the debtor.   If this were a transfer of this account by the plaintiffs to Morrison, without the consent of the defendant, Morrison would have to sue in the name of the partners, which a judgment in this case in favor of *Bird* would defeat.   It might be competent for Morrison to collect and receive this debt, but it does not appear that it has been actually paid by *Bird*.   Then, as it has not been paid by *Bird*, and as there is no allegation that *Lester H. Cotton*, one of the plaintiffs, ever consented to, or engaged in the alleged arrangement between *Fake* and Morrison the

plaintiffs' recovery in this action cannot thereby be defeated."

The correctness of the instruction here given, is recognized in the case of *Horback v. Huey*, 4 Watts, 455 ; in *Bun v. Morris*, 1 Caines, 54 ; and indeed it is so clearly recognized in all the authorities, that we do not think it admits of a doubt. In the instruction there is no error.

Thus far the exceptions were taken to the general charge of the court to the jury. The fifth charge excepted to, was upon instructions asked for by the defendant in these words : " That *Lester H. Cotton* is bound in this matter by the act of *Fake*, being copartners," to which the court replied and charged the jury : " *Cotton*, in this matter is not bound by the act of *Fake*, without his consent." That one partner may bind his copartner in transactions relating to the business of copartnership, with third persons, is a principle coeval with partnership itself; and it is equally clear that no arrangement about the partnership business as between themselves, by some of the members of a firm, can bind those who do not concur therein. Were it otherwise, it would at any time, be in the power of one partner of a firm to ruin the balance.

The sixth and remaining instruction asked for by the defendant, and excepted to as given, is this : " That if the debt to *Fake & Cotton* has been paid at their request, and has been credited by Morrison to them, then the plaintiff cannot recover." To which the judge replied : " This is a debt to the whole firm, and if paid in any way by defendant, the plaintiffs cannot recover."

This we consider a self-evident proposition.

We cannot see, after examination of the whole case, that the district court committed any error in any of the charges or instructions or opinions given. The judgment of the district court is therefore affirmed with costs.